

**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

*Anita Eve*
*Direct Dial: (215) 861-8577*
*Facsimile: (215) 861-8618*
*E-mail Address:anita.eve@usdoj.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

October 21, 2013

Honorable Mitchell S. Goldberg
Judge, United States District Court
7614 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1744

**VIA FACSIMILE TO (267) 99-5056**

      Re: *United States v. Denise Haines*
         Criminal No. 11-596

Dear Judge Goldberg:

      Pursuant to the Court's October 10, 2013 Order directing the parties to take a position regarding whether defendant Denise Haines should be granted a two-level reduction for "minor participant" under U.S.S.G. § 3B1.2(b), the government submits that, given the defendant's acts and responsibilities in the bank fraud scheme, the reduction is not applicable.

      As the Court is aware, the Sentencing Guidelines define a "minor participant" as one who is substantially less culpable than the average participant in the offense and who is less culpable than most other participants, but whose role could not be described as minimal. U.S.S.G. § 3B1.2, note 3; United States v. Carr, 25 F.3d 1194 (3d Cir. 1994). To assess culpability, the Court should draw a comparison of the culpability of the participants but also measure each participant's acts and relative culpability against the elements of the offense of conviction. See United States v. Belitz, 141 F.3d 815, 818-19 (8th Cir. 1998). The Court should also consider all of the individuals who participated in the offense, not just those who have been convicted. See §3B1.2, note 1; U.S.S.G. §3B1.1, comment note 1.

      In this case, clearly Michael Wilkerson designed the bank fraud scheme, recruited the "straw purchasers," and influenced the decisions made by the appraisers and settlement officer. However, Haines was a key and necessary participant in the fraud scheme. As the government has previously pointed out in response to Haines' post-trial Motion for Reconsideration/Judgment of Acquittal, the straw purchasers testified that they provided Haines with their actual occupations, income and assets and Haines modified them in the loan applications that were submitted to Chase. They also testified that they did not intend to live at any of the homes and did not inform Haines that they would be making down payments in any amount, let alone the amounts set forth in the applications that Haines submitted to Chase. Moreover, at the settlements, Haines made no effort to ensure that Chase's interests and closing instructions were met because Haines ignored the fact that Joyce Wilkerson was endorsing checks at the settlement table and her name was added to each deed. Also, that the "straw purchasers" were not making the requisite down payments, and, in one instance, a "straw purchaser" was given money by Michael Wilkerson at the settlement table. All of this happened after Haines had represented in the loan applications that she submitted to Chase that the "straw purchasers" were the only borrowers and the

source of the down payments would be from the borrowers' checking/savings accounts. Even if she did not recognize the criminal nature of what was taking place prior to the settlements, surely when she saw what did transpire at the settlement table her actions taken afterwards tend to reveal her knowing participation and/or willful ignorance of the criminal nature of the repeated transactions.

A truly remarkable instance of Haines' participation in the bank fraud scheme was revealed by the testimony of Tanisha Monteiro, who stated that she did not provide Haines with her income and assets and never advised Haines that she intended to live in the property that was the subject of a loan application. Nevertheless, Haines informed Monteiro to fax her a note that falsely stated that Monteiro intended to reside in the property. Later, after the loan application was denied, Monteiro stated that Haines did not inform her of the denial, instead Haines simply ignored her telephone calls. Also, Garell testified that he had a conversation with Haines around the time that Monteiro's loan application had been denied and Haines told Garell that she was no longer able to originate any more loans because someone was checking her work. Thus, after the failed attempt to obtain Monteiro's loan the scheme came to a conclusion.

Haines' level of participation, while not as great as that of Michael Wilkerson, was nonetheless greater than that of any of the other participants in the scheme. Like Michael Wilkerson, Haines became associated with each of the "straw purchasers" for the purpose of them obtaining mortgages to purchase a home identified by Michael Wilkerson. In the case of Leroy Cypress, Haines prepared four loan applications for him and either knew or should have known that the income and asset information on the succession of loan applications was fraudulent.[1] Haines was present for each of the "straw purchasers'" settlements and reaped substantial rewards averaging nearly $10,000 based on the amounts of the first and second mortgages on each house that was transferred as part of the bank fraud scheme. Haines was also more involved in the bank fraud scheme than Joyce Wilkerson, who simply signed the settlement paperwork and made payments toward the mortgages after the settlements, and Lee Garell, who prepared the sales agreements and obtained a commission based on the sale price of the homes by Orleans to Agape, not based on the sales to the "straw purchasers." As a result, by comparison, Haines' role was greater than that of Joyce Wilkerson and Lee Garell.

Furthermore, although the "straw purchasers" were not charged, by comparison, they too played a lesser role than that of Haines. They sold their name and credit worthiness as part of the scheme concocted by Michael Wilkerson. But, according to the testimony of each of the "straw purchasers," they were unaware of the fraudulent information contained in the loan applications that Chase relied upon. Similarly, the appraisers and settlement officer were unaware of the criminal nature of their actions and their roles pale in comparison to that of Haines.

Without Haines' involvement, the fraudulent scheme could not have happened. She was involved because she was someone with knowledge of the types of loans, namely "stated asset" loans, could be obtained without the borrower being required to provide verification of their income and assets. She was also aware that the "stated asset" loan application had to state that the borrower intended to live in the home. Haines was someone with many more years of experience in the loan business than her employer and for that reason she was able to work without supervision in getting the fraudulent loan applications identified in this case to Chase and getting them approved. She also ignored the succession of questionable actions that took place at each of the settlements when the homes were initially sold by Orleans for one price to Agape and instantly sold by Agape for almost twice the initial price to the "straw purchaser" and Joyce Wilkerson. Thus, without Haines' knowledge of the business and her position with

---

1 Government Exhibits 30 and 31 represent the initial loan files prepared by Haines for the Cypress loans that were not approved.

American Group Mortgage, the fraudulent scheme could not have happened.

     Based on this analysis, the government submits that Haines' conduct was material or essential to committing the bank fraud scheme. The evidence seems fairly clear that she knew what she was doing and she knew she was acting inappropriately here repetitively. Because Haines was so incredibly involved in the criminal activities either knowingly or, as the Court has articulated, with willful blindness to their criminal nature, there simply is no justification in calling her a minor participant. Therefore, the government recommends that the Court determine that the "minor participant" adjustment is inapplicable.

                                          Very truly yours,

                                          ZANE DAVID MEMEGER
                                          United States Attorney

                                          /s/ Anita Eve
                                          ANITA EVE
                                          Assistant United States Attorney

cc:    R. Emmett Madden, Esquire via electronic mail
        Cassie L. Musselman via electronic mail